[Cite as *State v. Farris*, 2024-Ohio-868.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY


State of Ohio

        Appellee

v.

Bret Farris

        Appellant

Court of Appeals No.   E-22-049
                   E-22-050

Trial Court No.  2021-CR-402
              2020-CR-337

**DECISION AND JUDGMENT**

Decided:  March 8, 2024

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal of a November 29, 2022 judgment of the Erie

County Court of Common Pleas, sentencing appellant to a 48-month total term of

incarceration following appellant's convictions on one count of violation of a protection

order, in violation of R.C. 2919.27(A), a felony of the third degree, one count of

menacing by stalking, in violation of R.C. 2903.211(A), a felony of the fourth degree, and one count of telecommunications harassment, in violation of R.C. 2917.21(A), a felony of the fifth degree. For the reasons set forth more fully below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Bret Farris, sets forth the following four assignments of error:

I. The trial court erred in denying [appellant's] motion to dismiss and/or transfer the indictment in case 2021-CR-402, as that indictment was identical to a separate indictment for which [appellant] had previously been indicted, contrary to his rights against double jeopardy as secured by the Ohio and United States constitutions.

II. Even if separate indictments are permitted, any sentence related to any conviction in 2021-CR-402 must merge with any sentence in the prior conviction upon the same indictment language, rendering the sentence here void.

III. Insufficient evidence was presented in both cases to sustain a conviction, specifically the state did not submit sufficient evidence to establish the elements of a felony menacing by stalking charge committed while violating a protection order.

IV. The trial court erred when it overruled [appellant's] objection to the prosecution asserting to the jury in closing that [appellant] had an obligation to present witnesses, and though the court did give instructions after the fact that [appellant] had no burden in the case, these instructions were not curative as the

objection was overruled, and moreover were not specific to the issue, in violation of [appellant's] rights to due process and a fair trial under the Ohio and United States constitutions.

{¶ 3} The following undisputed facts are relevant to this appeal. This case arises from a chance encounter in January, 2019, between appellant and T.A., a woman whom he met at an A.A. alcohol sobriety support meeting. The parties entered into a relationship and, shortly thereafter, appellant moved into the rental property where T.A. lived with her children. Appellant was not added as a party to T.A.'s lease agreement, nor did he contribute towards the rent or household expenses. Following a period of cohabitation, both parties relapsed into drug and alcohol use.

{¶ 4} Upon their relapse, the relationship devolved and became volatile. On April 3, 2020, T.A. called the Sandusky Police Department requesting emergency assistance after appellant brandished a knife at her during a domestic dispute. However, after law enforcement arrived at the scene, T.A. declined to press charges and, when pressed, she recanted and denied needing help or protection from appellant.

{¶ 5} On April 4, 2020, the day after the knife incident, appellant called the Sandusky Police Department and reported that T.A. was attempting to eject him from her residence. T.A. informed the responding officers that appellant had pilfered her debit card, made multiple unauthorized purchases, and she now wanted him out of her home. T.A. was advised by the police that she would need to initiate a formal eviction of appellant if he would not move out of the residence voluntarily.

3.

**{¶ 6}** As the situation continued to deteriorate, the volume of emergency calls escalated. Approximately one week later, T.A. again called the Sandusky Police Department. She reported that appellant was intoxicated and attempting to trigger an altercation. T.A. was again advised to have appellant formally evicted. T.A. called the Sandusky Police Department later that same day to report that appellant was refusing to stop smoking in front of her asthmatic daughter. Illustrative of the many additional incidents reported to the police in the course of April, 2020, examples include T.A. calling the police to report that appellant turned off the electric box to her residence in retaliation for T.A. changing her internet password to prevent appellant from continuing to use her internet service, T.A.'s children calling the police to report that appellant had locked T.A. in the bathroom and would not allow her to exit, and T.A. calling the police to report appellant's theft of various items of personal property from her.

**{¶ 7}** Following these events, T.A. followed up with her landlord requesting a formal eviction of appellant. At the end of April, 2020, the landlord filed an eviction action against appellant. On May 4, 2020, T.A. transported appellant for his placement into a residential alcohol treatment facility in Toledo. In June, 2020, T.A. visited appellant at the treatment facility. In July, 2020, T.A. sent money to appellant twice via CashApp to provide him with funds during his stay at the treatment facility. At trial, in explaining why she would continue to support appellant, despite the toxic turn that the relationship had taken, T.A. explicated that her involvement with appellant had rendered her, "twisted and so confused * * * [so] it was just hard to let go."

4.

{¶ 8} Ultimately, T.A. did recognize that ongoing involvement with appellant was unwise and she advised him not to contact her anymore. However, despite appellant's formal eviction from T.A.'s residence, placement in a residential alcohol treatment facility, and T.A. notifying him to cease contact with her, appellant persisted.

{¶ 9} On July 21, 2020, T.A. called the Sandusky Police Department and made a telephone harassment report against appellant. The investigating officer confirmed T.A.'s information that appellant had been repeatedly calling her over an extended period of time from the Toledo treatment facility, following her repeated requests that he not do so. Appellant was then notified by the officer to cease communicating with T.A. or criminal charges would be filed against him.

{¶ 10} On August 3, 2020, appellant was booked into the Erie County jail on separate criminal matters and he began calling T.A. from jail. Appellant also began calling T.A.'s relatives given her refusal to accept his calls. On August 10, 2020, the Sandusky Police Department verified that appellant had called T.A. on 19 occasions from the jail, following their explicit instruction to him not to do so.

{¶ 11} On September 21, 2020, given the above-detailed circumstances, T.A. was granted an ex parte civil protection order against appellant. Appellant was served with the order in the Sandusky County jail, where he remained incarcerated on unrelated cases. Nevertheless, appellant defied the protection order and continued calling T.A. Upon his release from jail, appellant returned to the alcohol treatment facility in Toledo.

5.

{¶ 12} On October 11, 2020, T.A. went to the Sandusky County Police Department with a letter sent to her from appellant's alcohol treatment facility in Toledo in which he expressed a desire for them to move in together again and to be physically intimate with her. The letter was sent in violation of the civil protection order. On October 15, 2020, T.A. received a second letter from appellant and she reported it to the Sandusky County Police Department. The letter was sent in violation of the civil protection order.

{¶ 13} In October, 2020, in case No. 2020-CR-337, appellant was indicted on one count of telecommunications harassment, in violation of R.C. 2917.21(A), a felony of the fifth degree, and, in case No. 2021-CR-407, appellant was indicted on one count of violation of a protection order, in violation of R.C. 2919.27(A), a felony of the third degree, and one count of menacing by stalking, in violation of R.C. 2903.211(A), a felony of the fourth degree. On March 1, 2022, appellee filed a motion for consolidation of the cases for trial purposes. The motion was granted.

{¶ 14} On March 18, 2022, appellant filed a motion to dismiss or transfer in case No. 2021-CR-407, alleging on double jeopardy grounds that he had previously been convicted and sentenced on the same offenses, in case No. 2021-CR-079. In response, appellee elaborated that the acts underlying case No. 2021-CR-407 involved appellant's second letter sent to T.A. in violation of the civil protection order, as received by T.A. on October 15, 2020, while the acts underlying case No. 2021-CR-079 involved the first, separate letter sent by appellant to T.A. in violation of the civil protection order, as

6.

received by T.A. on October 10, 2020.  As such, appellee argued that these two different letters sent on two different dates following the issuance of the protection order constituted two separate acts and two separate crimes and, thus, it did not violate appellant's double jeopardy rights by being separately charged.  The trial court concurred.  Appellant's motion was dismissed.

{¶ 15} On November 2, 2022, the case proceeded to jury trial.  Appellant was found guilty on all counts.  On November 29, 2022, appellant was sentenced to a 48-month total term of incarceration.  This appeal ensued.

{¶ 16} In the first assignment of error, appellant argues that the trial court erred in denying his motion to dismiss or transfer, again premised upon the assertion that failing to do so infringed upon his constitutional protection against double jeopardy.  We do not concur.

{¶ 17} In support of the first assignment of error, appellant maintains that the indictment underlying case. No. 2021-CR-402 was insufficiently described, such that it can be construed that he was impermissibly charged and sentenced a second time for the same acts underlying case No. 2021-CR-079.  The record of evidence runs counter to this position.

> As this court held in *State v. Mott*, 217 N.E.3d 920, 2023-Ohio-2006, ¶ 15, Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy.  *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68

7.

N.E.3d 790, ¶ 20 * * * the question at issue in our de novo review is whether appellant's * * * conduct constitutes the 'same act' for which he was convicted [in the separate case] * * * The phrase 'same act' * * * refers to the same conduct. *State v. Nickelson*, 2020-Ohio-1149, 152 N.E.3d 1288, ¶ 36 (7th Dist.).

{¶ 18} In conjunction, as this court held in *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 204, an indictment is constitutionally sufficient if it, "Contains the elements of the offense[s] * * * gives the defendant notice of the charge[s] * * * [and] protects the defendant against double jeopardy by enabling him to plead an acquittal or conviction and bar of future prosecutions for the same offense[s]."

{¶ 19} As applied to the instant case, as discussed above, appellant's position upon appeal is that the indictment in case No. 2021-CR-402 failed to protect him against double jeopardy based upon his prior conviction on an allegedly identical offense underlying case No. 2021-CR-079. Appellant's position is premised upon both offenses arising from the same act or conduct.

{¶ 20} Appellant's position fails to recognize that while the initial indictments in both cases contained identical language, as will be shown below, the evidence presented to the trial court encompassed facts and evidence which reflected separate, distinct acts and conduct, constituting separate, distinct criminal offenses which could be separately charged without running afoul of double jeopardy considerations.

8.

**{¶ 21}** The record shows that case No. 2021-CR-079 was prefaced upon appellant's first letter to T.A. sent in violation of the September, 2020, civil protection order, which was received by her on October 11, 2020. By contrast, the record shows that case No. 2021-CR-402 was prefaced upon appellant's second, separate, subsequent letter sent to T.A. in violation of the September, 2020 civil protection order, which was received by her on October 15, 2020. The record consistently shows that these two separate offenses, arising from two separate letters, were likewise reported by T.A. to the police on two different dates, corresponding to the two different receipt dates. The separate and distinct criminal acts and conduct underlying the respective cases was further affirmed by the related trial testimony of both T.A. and the investigating officers.

**{¶ 22}** The record contains ample, unrefuted evidence showing that the two separate cases stemmed from separate criminal conduct and actions, the sending of two separate letters, received on two separate dates, reported to the police on the two separate receipt dates, both of which were sent in violation of the September, 2020, civil protection order.

**{¶ 23}** Wherefore, based upon our de novo review, we find that, in accord with *Mott*, appellant's conduct underlying the two above-captioned cases did not constitute the 'same act', in breach of double jeopardy protections. Accordingly, we find appellant's first assignment of error not well-taken.

**{¶ 24}** In appellant's second assignment of error, appellant similarly maintains that the trial court erred in not merging case No. 2021-CR-402 into 2021-CR-079 for

9.

conviction and sentencing purposes, likewise premised on the notion that they both arose from the same act.  We do not concur.

{¶ 25} As this court held in *State v. Turvey*, 6th Dist. Lucas Nos. L-22-1112,1113,1114, 2023-Ohio-2248, ¶ 107-108,

> R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, which prohibits multiple punishments for the same offense.  *State v. Rogers*, 6th Dist. Erie Nos. E-21-027/031, 2022-Ohio-4126, 2022 WL 17076596, ¶ 16 * * * The test for determining whether allied offenses should be merged is well-established:  As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions [to conclude] whether a defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?  An affirmative answer to any of the above will permit separate convictions.  *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.  Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims *or if the*

10.

*harm that results from each offense is separate and identifiable*. *Ruff* at ¶

23. (Emphasis added).

**{¶ 26}** As discussed in detail above, in response to appellant's first assignment of error, the defendant's unlawful conduct and actions involved sending two separate letters to T.A., both in violation of the September, 2020, civil protection order, received by T.A. on two separate dates, and reported by T.A. to the police on the two separate receipt dates. The harm that resulted from each offense is, therefore, separate and identifiable.

**{¶ 27}** Accordingly, in accord with *Ruff*, the record demonstrates that the offenses were not allied offenses subject to merger for conviction and sentencing purposes. We find appellant's second assignment of error not well-taken.

**{¶ 28}** In appellant's third assignment of error, appellant contends that his convictions for violation of a protection order and for menacing by stalking were not supported by a sufficiency of the evidence. We are not convinced.

> As this court held in *State v. Ruetz*, 208 N.E.3d 390, 2023-Ohio-398, ¶ 31,
>
> [When] appellant challenges sufficiency of the evidence to support
>
> conviction[s] * * * we review each conviction * * * to determine whether
>
> any rational trier of fact could have found the essential elements of the
>
> crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89,
>
> 684 N.E.2d 668 (1997). To pass the test of sufficiency, the evidence must
>
> be adequate to sustain the verdict. *State v. Thompkins*, 78 Ohio St.3d 380,
>
> 678 N.E.2d 541 (1997). A sufficiency review presents only a question of

11.

law, with credibility determinations regarding evidence not part of that review. *Thompkins*, at 386.

{¶ 29} As regards appellant's menacing by stalking conviction, R.C. 2903.211(A)(1) establishes, in relevant part, "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person   * * * or cause mental distress to the other person."

{¶ 30} The record reflects that appellant was convicted of menacing by stalking for a litany of actions committed by appellant occurring from April 1, 2020 through October 16, 2020.  In support of this conviction, the record reflects through the undisputed trial testimony of both T.A. and the responding police officers, actions including, but not limited to, appellant brandishing a knife at T.A., using T.A.'s debit card without permission to make numerous unauthorized purchases, shutting down the power to T.A.'s residence in retaliation for her no longer providing him free internet access, locking her inside a bathroom, and physically blocking her exit.

{¶ 31} We find that a rational trier of fact could find evidence demonstrating that appellant knowingly engaged in a pattern of conduct that caused T.A. to believe that appellant would cause her physical harm or emotional distress, constituting the offense of menacing by stalking.

{¶ 32} As regards appellant's violation of a protection order conviction, R.C. 2919. 27(A)(1) establishes, in relevant part, "[N]o person shall recklessly violate the terms of a protection order issued * * * pursuant to section 2919.26431 1.31 of the

12.

Revised Code." In conjunction, R.C. 2901.22(C) establishes, in relevant part, that the person acts recklessly when, "[W]ith heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result."

{¶ 33} The record reflects on September 21, 2020, T.A. obtained a civil protection order against appellant and it was served upon appellant that same day in the Erie County jail. The record further contains undisputed evidence that appellant sent multiple letters to T.A. in October, 2020, in violation of the civil protection order, as well as engaged third parties to contact T.A. on appellant's behalf, also in violation of the civil protection order.

{¶ 34} We find that a rational trier of fact could find evidence demonstrating that appellant recklessly violated the terms of the September 21, 2020 civil protection order, disregarding a substantial and unjustifiable risk that the conduct was likely to cause a certain result, constituting the offense of violation of a protection order.

{¶ 35} Appellant also argues that the convictions were improper based upon appellant's own, subjective characterization of the correspondence that he sent to T.A. as conciliatory, and therefore, not actionable. We note that this argument is unaccompanied by legal authority. We further note that civil protection orders make no such distinctions. Regardless, T.A. testified at trial that during October, 2020, "[T]hings were starting to get scary, threats, and I believed them, and I was scared."

13.

**{¶ 36}** Based on the foregoing, we find that a rational trier of fact could find evidence of the elements demonstrating appellant's menacing by stalking and violation of a protection order convictions. We find appellant's third assignment of error not well-taken.

**{¶ 37}** In appellant's fourth assignment of error, appellant contends that the trial court erred in overruling appellant's objection to the prosecution's statement during closing arguments questioning appellant's failure to call a claimed alibi witness to testify at trial. Although the assigned error references trial court error, appellant's argument in support challenges the conduct of the prosecution in three specific instances: (1) mention of appellant's witness, permitted by the trial court, (2) characterizing T.A.'s provision of funds to appellant via CashApp as motivated by fear, and (3) mention of the uncharged "swatting" incident. Thus, while assigning trial court error as the assigned error, appellant argues prosecutorial misconduct in his fourth assignment of error.

> As this court held in *State v. Craig*, 176 N.E.3d 395, 2021-Ohio-2790, ¶ 134,
>
> [A]ny claim of prosecutorial misconduct is waived, absent plain error.
> *Searfoss*, *supra*, 2019-Ohio-4619, 135 N.E.3d 853, at ¶ 141 * * * Under
> Crim.R. 52(B), plain error is limited to those errors or defects that affect
> substantial rights. Consequently, we may reverse for plain error only if it is
> clear that appellant would not have been convicted in the absence of the
> allegedly improper conduct.

14.

{¶ 38} In support of the fourth assignment of error, appellant specifically cites three separate instances of alleged prosecutorial misconduct, which appellant argues should be construed as outcome altering. We shall now address each of these three instances, in turn.

{¶ 39} Appellant first cites a prosecution statement made during closing arguments that, "He has a witness. Why is this witness not here to confirm his side?", in reference to an alleged witness that appellant disclosed to an investigating officer, but whom was not called to testify at trial. Based on the recording played for the jury, appellant claimed he had a witness who would confirm that T.A. was the one initiating contact with him, back when appellant was in Toledo. Appellant's objection was overruled and the prosecution was, therefore, permitted to address the matter. The prosecutor repeated his reference to a witness, stating, "This witness is not here to confirm his story. You heard Officer Wilson did speak to this man and he did not confirm his story." At the end of the prosecution's closing argument, the trial court instructed the jury, "[T]he defendant has no burden of proof in this case * * * [T]he burden of proof rests completely on the State of Ohio * * * [T]he defense does not have to produce any witnesses or evidence or anything of that nature." Appellant offers no evidence, other than the subsequent conviction, in support of the notion that he was prejudicially impacted by the reference to the witness not called, such that appellant would not have otherwise been convicted.

15.

{¶ 40} Appellant next cites a prosecution statement during closing arguments, referencing T.A.'s provision of funds to appellant via CashApp when appellant was in residential alcohol treatment in Toledo, which occurred after T.A. first sought police assistance. Appellant argues that the statement created an impression that the, "[V]ictim was acting out of some vague fear[,] which is not supported."

{¶ 41} We have reviewed the transcript of the relied upon portion of the closing arguments. The prosecution stated, in relevant part, "I expect [that] defense counsel is going to argue that these CashApp transactions * * * are going to confirm that [T.A.] initiated the contact. Now, I would assert to you that that is not necessarily accurate. It's equally plausible that [T.A.] felt compelled to send [appellant] money for some other reason * * * She seems to be in a dysfunctional relationship to him and that does not necessarily mean that she was the one who initiated the contact on the date that those [CashApp] transactions took place."

{¶ 42} The record shows that the prosecution did not engage in arguably improper innuendo against appellant, as claimed by appellant. The prosecution simply noted that the relationship between the parties was dysfunctional and asked that any claims related to the victim be viewed in that context. In addition, appellant did not demonstrate an outcome altering, prejudicial impact by the disputed statement.

{¶ 43} The third instance cited by appellant was when the prosecution stated, "When [appellant] called in this bogus robbery at [T.A.'s] residence, he was sending the police to her residence. That is contact."

16.

**{¶ 44}** The alleged swatting incident was testified to at length during trial. The police determined they could not definitively establish that appellant was responsible for the call, but they also clearly testified that they had not exonerated appellant. Thus, the issue had been presented to the jury, and the jury was already aware that it was an unanswered question.

**{¶ 45}** Regardless, the record contains numerous other unrefuted instances of unlawful contact by appellant to T.A., in violation of the protection order, which had already been presented at trial, irrespective of the disputed swatting incident. Whether or not appellant triggered the swatting incident at the victim's residence, the evidence indisputably showed that appellant did engage of multiple other acts of unlawful contact with the victim. Thus, we find that appellant has not demonstrated that he would not have been convicted, but for the disputed swatting incident reference during closing arguments.

**{¶ 46}** Accordingly, we find appellant's fourth assignment of error not well-taken.

**{¶ 47}** On consideration whereof, we find that appellant has not demonstrated that the trial court erred in denying appellant's motion to dismiss, in declining to merge the offenses, in finding that the offenses were supported by a sufficiency of the evidence, and in overruling appellant's objection during closing arguments. Based upon the forgoing, the judgment of the Erie County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.             _____

                                                    JUDGE

Gene A. Zmuda, J.


Charles E. Sulek, P.J.          _____

CONCUR.                                             JUDGE


                                           _____

                                                    JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.